UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**VINCENT ARMONE,**

      **Plaintiff,**

      v.

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

Case No. 3:18-cv-10526
Magistrate Judge Norah McCann King

## **OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Vincent Armone for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On June 12, 2014, Plaintiff filed his application for benefits, alleging that he has been disabled since February 3, 2014. R. 219–27. The application was denied initially and upon reconsideration. R. 138–42, 146–48. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 149–50. Administrative Law Judge Deanna Sokolski ("ALJ") held a hearing on March 31, 2017, at which Plaintiff, who was represented by counsel, testified, as did a vocational

1

expert. R. 70–106. In a decision dated May 3, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 3, 2014, the alleged disability onset date, through the date of that decision. R. 11–22. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 23, 2018. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 7, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[1] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 17. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

3

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

4

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

5

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 44 years old on his alleged disability onset date. R. 20. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. R. 13. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 3, 2014, his alleged disability onset date, and the date of the ALJ's decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: coronary artery disease, status post pacemaker, hypertension, obesity, left proximal bicep rupture, right radius fracture, anxiety, depression, and memory loss. *Id.* The ALJ also found that Plaintiff's Vitamin D deficiency, high cholesterol, and anemia were not severe. R. 13–14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14–16.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 16–20. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a home health aide and stock clerk. R. 20.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 400,000 jobs as a packer; approximately 300,000 jobs as an assembler; approximately 90,000 jobs as an inspector—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 21–22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 3, 2014, his alleged disability onset date, through the date of the decision. R. 22.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 22.[2] The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 23.

## IV. DISCUSSION

Plaintiff raises several challenges to the ALJ's decision, including, *inter alia*, his contention that the ALJ erred when considering Plaintiff's mental impairments at step three of the sequential evaluation. *Plaintiff's Moving Brief*, ECF No. 22, pp. 24–33. Plaintiff specifically challenges the ALJ's consideration of the paragraph B criteria of Listings 12.04 and 12.06. *Id.* This Court agrees.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*,

---

[2] Plaintiff refiled his brief because his first-filed brief contained blank pages. *Compare Plaintiff's Moving Brief*, ECF No. 21, *with Plaintiff's Moving Brief*, ECF No. 22.

493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Listing 12.04 addresses depressive, bipolar, and related disorders, and Listing 12.06 addresses anxiety and obsessive-compulsive disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 (2017). In order to meet either of these Listings, a claimant must satisfy these Listings' paragraph A criteria and either the paragraph B or the paragraph C criteria of these Listings. *Id.* The paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two,[3] of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. *Id.* The paragraph C criteria are met if the claimant's mental disorder is "serious and persistent[,]" *i.e.*,

---

[3] A "marked" limitation means that the claimant is seriously limited in his ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id.* An "extreme" limitation means that the claimant is unable to function independently, appropriately, and effectively on a sustained basis in a specified area. *Id.*

9

the claimant has a medically documented history of the existence of the disorder over a period of at least two years and there is evidence of both of the following: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment, *i.e.*, the claimant has minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of his daily life. *Id.*

Here, when considering the paragraph B criteria, the ALJ determined that Plaintiff had only mild or moderate limitations:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has *mild limitation*. The claimant is reportedly able to follow instructions if they are written down. (5E/6) The claimant reported experiencing some memory loss in May 2015, along with difficulty understanding things. (11F/13) A head CT in June 2015 revealed extensive atherosclerotic calcification of the posterior circulation, but was otherwise normal. (11F/5) A physical exam was normal. (11F/14) The doctor prescribed vitamin supplements to aid with memory problems. (Id.) *Since the doctor could not find a source for the memory loss and mental status exams were normal, he does not have moderate impairment in understanding, remembering, or applying information.*
>
> In interacting with others, the claimant has moderate limitation. He reportedly spends time with others, talking, relaxing, and watching movies with family and friends. (5E/5) Since having a heart attack, the claimant reportedly does not like to be alone and panics when in crowds, due to fear of another attack. (Id.) He reported some social withdrawal, but after taking medication, his doctor reported substantial improvement in mood, anxiety level, and even increased social interaction. (11F/2)

> Since he is improving on medication, reported interacting with family and friends, the claimant does not have marked limitation in interacting with others.
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitation. The claimant is reportedly able to watch television and use an iPad. (5E/5) A mental status exam revealed normal function. (12F/9-10, 7F/2) *Medication helped reduce irritability and anxiety, which should help with concentration.* (11F/21) For these reasons, the claimant has moderate but not marked limitation in this area.
>
> As for adapting or managing oneself the claimant has mild limitation. The claimant reportedly has wakeful sleep. (5E/2) He is able to care for his personal grooming needs. (Id.) The claimant reportedly goes outside a few times per week, but likes to have someone accompany him, due to fears of sudden illness. (5E/4) His wife reportedly cooks and takes care of bills and household chores. (Id.) He testified that he walks the dog and takes his son to and from school. Since he is able to keep to a schedule and perform these activities of daily living, he does not have more than mild limitation in adapting and managing oneself.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

R. 14–15 (emphases added).

Plaintiff challenges the ALJ's consideration of Plaintiff's ability to understand, remember, or apply information. *Plaintiff's Moving Brief*, ECF No. 22, pp. 30–32. Plaintiff specifically challenges the ALJ's assertion that "the doctor could not find a source for the memory loss[,]" arguing that the ALJ failed to properly consider the June 2015 CT scan of Plaintiff's head. *Id*. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter*, 642 F.2d at 704. In addition, an ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" and provide an explanation of the decision sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted

some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without such an explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, the ALJ "'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

As noted, the ALJ based her finding that Plaintiff has only a mild limitation in the area of understanding, remembering, or applying information on, *inter alia*, the fact that "the doctor could not find a source for the memory loss...." R. 15 (citing Exhibit 11F/14, R. 546 (reflecting, *inter alia*, reflects, *inter alia*, "Problem # 1: MEMORY LOSS (ICD-780.93) (ICD10-R41.3) etiology? blood sugar? vascular? lipitor? *check labs and ct*") (emphasis added); *see also* R. 545–

12

59 (reflecting five pages of notes from the office visit on May 28, 2015). It is true that Rajney Monica Bais, M.D., indicated in her notes from a May 28, 2015, office visit that she "could not find a source for the memory loss[.]" R. 546. However, these notes also specifically reflect the doctor's intention to "check" Plaintiff by ordering a CT scan, *id.*, which was in fact administered on June 1, 2015. R. 536–39 (reflecting two-page imaging report of CT scan of head/brain taken on June 1, 2015, and two-page radiology record from Riverview Medical Center's Department of Diagnostic Imaging). That CT scan yielded "a significant finding[,]" R. 536, 538, including "extensive atherosclerotic calcification of the posterior circulation, which is poorly evaluated in the relatively young patient, stated age 45 years." R. 539 (noting further "[c]alcification along the posterior margins of both globes. Possible post surgical change along the right superior globe….")

      Although the ALJ referred to the June 2015 CT scan, R. 15, the ALJ did not adequately explain her reliance on the note from the May 2015 office visit in light of the "significant finding," R. 536, 538, reflected in that subsequent CT scan. In the view of this Court, the ALJ's finding in this regard was based, at least in part, on a mischaracterization or inadequate consideration of the June 2015 CT scan. Although an ALJ may choose which evidence to credit, the ALJ cannot discount evidence for the wrong reason. *Sutherland*, 785 F. App'x at 928; *Cotter*, 642 F.2d at 706–07; *cf. Morales*, 225 F.3d at 317 (stating that an ALJ may not make "speculative inferences from medical reports"); *Rodriguez v. Colvin*, No. CV 16-4322, 2018 WL 1474073, at *4 (E.D. Pa. Mar. 23, 2018) ("Courts have concluded that substantial evidence cannot be based on factual errors.") (collecting cases). Accordingly, this Court cannot conclude that substantial

13

evidence supports the ALJ's misreading of or failure to properly consider the June 2015 CT scan. *See id.*[4]

Plaintiff also disagrees with the ALJ's finding that Plaintiff's ability to concentrate, persist, or maintain pace was only moderately, but not markedly, limited. *Plaintiff's Moving Brief*, ECF No. 22, pp. 26–27. In making this finding, the ALJ commented that "[m]edication helped reduce irritability and anxiety, which should help with concentration." R. 15 (citing 11F/21, R. 553). However, the exhibit on which the ALJ relied in making this finding, *i.e.,* Dr. Bais' notes from an October 28, 2014, office visit, reached no such conclusion. R. 553 ("[P]resents for follow up on anxiety. [Symptoms] are markedly decreased with meds. Sleeping better, no more irritability, handling situations well. [N]o mood swings. [N]o anhedonia or social situation avoidance. [N]o adverse effects to meds.") In the view of this Court, the ALJ's finding in this regard reflects her improper speculation and a lay medical judgment for which the ALJ is wholly unqualified. *See Morales*, 225 F.3d at 317 ("an ALJ may not make speculative inferences from medical reports") (internal quotation marks and citations omitted); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) ("An ALJ may not make purely speculative inferences from medical reports.").

In sum, the Court concludes that the matter must be remanded for further consideration. It may be that, on remand, the Commissioner may again find that Plaintiff's mental impairments neither meet nor equal a Listed Impairment. That determination, however, is for the Commissioner—not this Court—to make in the first instance and must be based on a proper evaluation of the evidence of record. At this juncture, the Court finds that the ALJ's decision in

---

[4] In making this determination, the Court does not, of course, intend to suggest that the ALJ should have reached her own medical judgment as to the significance of the findings on the CT scan.

this regard is not supported by substantial evidence. This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of Plaintiff's mental impairments.[5]

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: May 25, 2021                             *s/Norah McCann King*
                                            NORAH McCANN KING
                                       UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's mental impairments, the Court does not consider those claims.